1
2
3
4
5
6
7
8

**UNITED STATES DISTRICT COURT**

9

**SOUTHERN DISTRICT OF CALIFORNIA**

10

11
NICHOLAS KORMYLO, M.D.;
KIMBERLY KORMYLO; and
12
BRYCE KORMYLO, by and through
his guardian ad litem KIMBERLY
13
KORMYLO,

14
                                    Plaintiffs,

v.
15
FOREVER RESORTS, LLC,
16
dba CALVILLE BAY RESORT
& MARINA; and KENNETH
17
WILLIAMS,

18
                                    Defendants.

19
FOREVER RESORTS, LLC,
20
dba CALVILLE BAY RESORT
& MARINA; and KENNETH
21
WILLIAMS,

22
                            Third-Party Plaintiffs,

v.
23
SCOTT PETERSON NEELY,

24
                            Third-Party Defendant.

25

CASE NO. 13-cv-511 JM (WVG)

ORDER (1) GRANTING BSA AND
BSA-SD'S MOTION TO DISMISS
FOR FAILURE TO STATE A CLAIM;
(2) DENYING BSA AND BSA-SD'S
MOTION TO STRIKE; AND
(3) GRANTING IN PART AND
DENYING IN PART MARK ALLEN
AND CHRIS WADDELL'S MOTION
TO DISMISS FOR LACK OF
PERSONAL JURISDICTION

26
27
28

13cv511

1  FOREVER RESORTS, LLC,
   dba CALVILLE BAY RESORT
2  & MARINA; and KENNETH
   WILLIAMS,
3
                      Third-Party Plaintiffs,
4  v.

5  BOY SCOUTS OF AMERICA;
   BOY SCOUTS OF AMERICA
6  SAN DIEGO-IMPERIAL COUNCIL;
   MARK ALLEN; WILLIAM DALE;
7  KELLY GARTON; TAYLOR
   HETHERINGTON; ROBERT JAFEK;
8  JAMES MICHAEL LEDAKIS;
   ROGER MCCLOSKEY; ERIC
9  JONATHAN SANFORD; ROBERT
   SHUMWAY; DAVID TAYLOR; and
10 CHRIS WADDELL,

11                    Third-Party Defendants.

12

13        Three motions are before the court.  Third-Party Defendants Boy Scouts

14 of America ("BSA") and Boy Scouts of San Diego-Imperial Council ("BSA-SD")

15 (collectively, "the Boy Scouts") move to dismiss the amended third-party complaint

16 for failure to state a claim, (Doc. No. 77), and to strike the attorney-fee allegations,

17 (Doc. No. 78).  Separately, Third-Party Defendants Mark Allen and Chris Waddell

18 move to dismiss the amended third-party complaint for lack of personal jurisdiction.

19 (Doc. No. 90.)  The motions were fully briefed and were set for hearing on

20 December 1, 2014.  After considering the filings, and because the parties did not

21 request oral argument, the court determined that the matters were suitable for

22 resolution without oral argument pursuant to Civil Local Rule 7.1.d.1 .

23        For the reasons set forth below, the court dismisses the claims against the

24 Boy Scouts but grants leave to amend; denies the Boy Scouts' motion to strike;

25 concludes that it has general personal jurisdiction over Mark Allen; dismisses Chris

26 Waddell for lack of personal jurisdiction; and denies Williams and Forever Resorts'

27 requests for jurisdictional discovery and leave to amend the jurisdictional allegations

28 regarding Waddell.

13cv511

# BACKGROUND[1]

## A.    Case History

On March 5, 2013, Plaintiffs Nicholas Kormylo, ("Kormylo"), Kimberly Kormylo, and Bryce Kormylo (collectively, "Plaintiffs") filed the initial complaint in this matter.  (Doc. No. 1.)  According to the complaint, Kormylo and his son, Bryce, were on a Boy Scout outing at Lake Mead, Nevada in July 2012, when Kormylo was run over and severely injured by the propeller of a power boat driven by Defendant Kenneth Williams, who was an employee of Defendant Forever Resorts LLC ("Forever Resorts").  (Id. ¶¶ 10–47.)   At the time of the accident, the complaint alleges, Kormylo was swimming in a triangular safe-swim zone he created by anchoring his boat about 50 yards away from two houseboats that were secured to the shore.  (Id. ¶¶ 23–24, 31–34.)  The triangle formed by the boats was intended "to provide notice to others that the area within the triangle was a designated swimming area."  (Id. ¶ 24.)  Plaintiffs assert claims for (1) negligence and vicarious liability; (2) negligent entrustment; (3) negligent hiring, supervision, instruction, and training; (4) loss of consortium; and (5) negligent infliction of emotional distress.  (Id. ¶¶ 48–90.)  Plaintiffs allege that this court has diversity jurisdiction, as they are California residents, Williams is a Nevada resident, Forever Resorts is an Arizona corporation, and the amount in controversy exceeds $75,000.  (Id. ¶¶ 2–7.)

On August 2, 2013, Williams filed a third-party complaint against Scott Peterson Neely, alleging that it was Neely, rather than Williams, who ran over Kormylo.  (Doc. No. 14-5.)  Williams's complaint against Neely asserts claims for (1) equitable indemnity, (2) comparative indemnity, and (3) declaratory judgment apportioning liability to Neely.  (Id. ¶¶ 11–19.)  On September 16, 2013, Forever Resorts also filed a third-party complaint against Neely, asserting the same claims

---

[1]   The facts in this section are drawn from relevant complaints and, at this stage, are taken as true to the extent that they are well pleaded.

1    and allegations Williams asserted against Neely.  (Doc. No. 27.)

2    **B.      The Instant Third-Party Complaint**

3         On August 13, 2014, Williams and Forever Resorts filed another third-party

4    complaint, this time against BSA, BSA-SD, and the adult leaders of Boy Scouts

5    of America Team 719 ("BSA Team 719"), the unit that organized the trip.  (Doc.

6    No. 51.)  On August 25, 2014, they filed an amended third-party complaint against

7    BSA, BSA-SD, and the adult leaders of BSA Team 719, whom they identify as

8    Mark Allen, William Dale, Kelly Garton, Taylor Hetherington, Robert Jafek, James

9    Michael Ledakis, Roger McCloskey, Eric Jonathan Sanford, Robert Shumway,

10   David Taylor, and Chris Waddell (collectively, "the adult leaders").  (Doc. No. 58.)

11   The amended third-party complaint asserts claims for (1) equitable indemnity,

12   (2) comparative indemnity, and (3) declaratory judgment apportioning liability to the

13   Boy Scouts and the adult leaders.  (Id. ¶¶ 39–47.)

14        The amended third-party complaint alleges as follows:  The adult leaders, who

15   are all California citizens, (id. ¶¶ 6–16), organized and planned the trip to Lake

16   Mead, set up the safe-swim zone Kormylo was swimming in when he was injured,

17   and prepared and filed the tour and activity plan for the trip, (id. ¶ 21).  The adult

18   leaders were negligent in organizing and planning the trip, as well as in setting up

19   the safe-swim zone because, among other things, they failed to follow the Boy

20   Scouts' Safe Swim Defense and Safety Afloat requirements, thereby causing or

21   contributing to any injuries Kormylo may have suffered.  (Id. ¶ 22.)

22        BSA provided the tour and activity plan on its website, sets the national

23   Boy Scout guidelines and requirements for tour and activity plans, and created

24   the national Guide to Safe Scouting, which includes Safe Swim Defense and Safety

25   Afloat.  (Id. ¶ 23.)  BSA-SD requires a tour and activity plan for all unit activities

26   that take place at a location other than the regular meeting place for the unit, and it is

27   authorized to reject any nonconforming tour and activity plan.  (Id. ¶ 24.)

28   As required by BSA and BSA-SD, the adult leaders filed a tour and activity plan

1 prior to the trip, were authorized by BSA and BSA-SD to take the trip, and were
2 allowed to label it a BSA-approved and authorized trip.  (Id. ¶ 25.)

3     Before a Boy Scout group engages in any swimming activity, BSA and BSA-
4 SD require that at least one adult leader has completed Safe Swim Defense training
5 within the previous two years, has a commitment card, and agrees to use the eight
6 defenses in Safe Swim Defense.  (Id. ¶ 26.)  Only one of the adult leaders listed
7 on the tour and activity plan is listed as having had Safe Swim Defense training.  (Id.
8 ¶ 27.)

9     Safe Swim Defense requirements include qualified supervision during
10 all swimming activity; personal health review of all participants; establishment
11 of a safe area with controlled access that is clearly marked and cleared of boating,
12 surfing, or other non-swimming activities; proper bottom conditions, depth,
13 visibility, water temperature, water quality, and weather; life-jacket use; assigning
14 response personnel, lookout, and a buddy system; and communication of the rules
15 and safety procedures for the trip.  (Id. ¶ 28.)  The adult leaders failed to follow
16 Safe Swim Defense by failing to adequately supervise swimming activity, failing
17 to establish safety protocols, failing to communicate the rules and safety procedures
18 for the trip, failing to use a lookout, failing to use a buddy system, and failing to
19 clearly establish a safe-swim area with controlled access.  (Id. ¶ 29.)

20     Similarly, before a BSA group engages in watercraft activity, BSA and
21 BSA-SD require that adult leaders have completed Safety Afloat training within the
22 previous two years, have a commitment card, and are dedicated to full compliance
23 with all nine requirements of Safety Afloat.  (Id. ¶ 30.)  Although Safety Afloat
24 requires one trained adult leader for every 10 participants, there were 20 youth
25 participants on the trip, but only one of the adult leaders listed on the tour and
26 activity plan is listed as having Safety Afloat training.  (Id. ¶ 31.)

27     Safety Afloat requirements include a personal health review and BSA
28 swimming classification for all participants, including adults; use of life jackets and

a buddy system; proper planning, including itinerary, notification of proper parties regarding activities, communication of arrangements, contingency in case of foul weather or equipment failure, and emergency response options; all equipment must be suitable for the activity; and all rules and procedures for safe boating must be communicated.  (Id. ¶ 32.)  The adult leaders failed to follow Safety Afloat by not having the required number of trained adult leaders, failing to implement safety protocols, failing to provide a lookout, failing to supervise, and failing to adequately plan for activities and communicate those plans.  (Id. ¶ 33.)

Because BSA and BSA-SD required and provided the tour and activity plan and required proper supervision and training for aquatic activities, they had a duty to ensure that tour and activity plans were properly approved and authorized, that safety requirements were followed, and that there were enough adult leaders who were adequately trained.  (Id. ¶¶ 34–35.)  BSA and BSA-SD were negligent in training the adult leaders and approving the tour and activity plan for the outing, which caused or contributed to any injuries Kormylo suffered.  (Id. ¶ 36.)

**DISCUSSION**

**A.      The Boy Scouts' Motion to Dismiss**

Third-Party Defendants the Boy Scouts contend that the claims against them in the amended third-party complaint should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6) because they fail to state a claim for relief and the indemnity claims are unripe.  (Doc. No. 77.)  For the reasons set forth below, the court construes the ripeness challenge as a motion to dismiss for lack of subject-matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1), and addresses that threshold issue before turning to the sufficiency of the allegations and whether amendment should be allowed.

///

///

///

1  **1.     Motion to Dismiss for Lack of Ripeness**

2  **a.     Legal Standard**

3  Federal Rule of Civil Procedure 12(b)(1) allows a litigant to seek dismissal

4  of an action from federal court for lack of subject-matter jurisdiction.  "Whether a

5  claim is ripe for adjudication goes to the court's subject matter jurisdiction under the

6  case or controversy clause of article III of the federal Constitution."  St. Clair v. City

7  of Chico, 880 F.2d 199, 201 (9th Cir. 1989).  "Like other challenges to a court's

8  subject matter jurisdiction, motions raising the ripeness issue are treated as brought

9  under Rule 12(b)(1) even if improperly identified by the moving party as brought

10  under 12(b)(6)."  Id.  "When subject matter jurisdiction is challenged under Federal

11  Rule of Procedure 12(b)(1), the plaintiff has the burden of proving jurisdiction in

12  order to survive the motion."  Tosco Corp. v. Cmtys. for a Better Env't., 236 F.3d

13  495, 499 (9th Cir. 2001), abrogated on other grounds by Hertz Corp. v. Friend, 559

14  U.S. 77 (2010).

15  "Ripeness has both constitutional and prudential components."  Wolfson

16  v. Brammer, 616 F.3d 1045, 1058 (9th Cir. 2010).  The constitutional component

17  "overlaps with the 'injury in fact' analysis for Article III standing."  Id.  "Whether

18  framed as an issue of standing or ripeness, the inquiry is largely the same:  whether

19  the issues presented are definite and concrete, not hypothetical or abstract."  Id.

20  (internal quotation marks omitted).

21  **b.     Ripeness of the Instant Third-Party Claims**

22  The Boy Scouts assert that the claims against them are unripe because,

23  under California law, indemnity claims do not accrue until a judgment has been

24  entered, and at this point there has been no settlement or judgment in the underlying

25  case.  (Doc. No. 77-1 at 7–9.)  As they point out, "[t]he California Supreme Court

26  has consistently ruled that a cause of action for indemnity does not accrue until

27  after the indemnitee has suffered a loss through payment of an adverse judgment

28  or settlement," and some courts have dismissed indemnity claims as premature for

1  that reason.  See, e.g., Oildale Mut. Water Co. v. Crop. Prod. Servs., Inc., 2014 WL
2  824958, at *4 (E.D. Cal. Mar. 3, 2014); Gregory Vill. Partners, L.P. v. Chevron
3  USA, Inc., 2012 WL 832879, at *6 (N.D. Cal. Mar. 12, 2012); Major Clients
4  Agency v. Diemer, 67 Cal. App. 4th 1116, 1132 (1998).

5        Williams and Forever Resorts counter, correctly, that the cases the Boy Scouts
6  rely on are inapposite because none of them involve a third-party complaint brought
7  under Federal Rule of Civil Procedure 14(a).  (Doc. No. 98 at 11).  That is an
8  important distinction.  Rule 14(a) permits a defendant to file a third-party complaint
9  against a nonparty "who is or may be liable to it for all or part of the claim against
10  it."  Fed. R. Civ. P. 14(a)(1) (emphasis added).  Accordingly, several federal circuit
11  courts, including the Ninth Circuit, have held that Rule 14(a) permits a defendant to
12  pursue an indemnity claim "even though the defendant's claim is purely
13  inchoate—i.e., has not yet accrued under the governing substantive law—
14  so long as the third-party defendant may become liable for all of part of the
15  plaintiff's judgment."  Andrulonis v. United States, 26 F.3d 1224, 1233 (2d Cir.
16  1994); see Mid-States Ins. Co. v. Am. Fid. & Cas. Co., 234 F.2d 721, 731–32
17  (9th Cir. 1956) (holding that a subrogation claim was not premature for this reason);
18  6 Wright et al., Federal Practice & Procedure § 1451 (3d ed. 2010 & Supp. 2014)
19  ("The words 'may be liable' mean that defendant is permitted to join someone
20  against whom a cause of action has not yet accrued, provided that the claim is
21  contingent upon the success of plaintiff's action and will accrue when defendant's
22  liability is determined in the main action or plaintiff's claim is satisfied.").  As one
23  court explained it:  "Rule 14(a) is, in effect, a recognition that where procedurally
24  it is possible to bring all related liability and indemnity or contribution claims in a
25  single action, the interests involved are sufficiently concrete to permit accelerated
26  adjudication of the inchoate claims."  Hecht v. Summerlin Life & Health Ins. Co.,
27  536 F. Supp. 2d 1236, 1241–42 (D. Nev. 2008).

28        The court agrees with this assessment and concludes that the indemnity

13cv511

claims against the Boy Scouts are sufficiently ripe for adjudication because they were brought pursuant to Federal Rule of Civil Procedure 14(a), although they have not yet accrued under California law.  Accordingly, the court denies the Boy Scout's request to dismiss the claims for lack of ripeness.

### 2. Motion to Dismiss for Failure to State a Claim

As noted earlier, the amended third-party complaint asserts claims against the Boy Scouts for (1) equitable indemnity, (2) comparative indemnity, and (3) declaratory judgment apportioning liability to BSA, BSA-SD, and the adult leaders.  The Boy Scouts contend that all three claims must be dismissed for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).  The court addresses the relevant legal standards before turning to the arguments regarding each claim and whether amendment should be allowed.

### a. Legal Standards

A motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) challenges the sufficiency of the pleadings.  For a plaintiff to overcome such a motion, the complaint must contain "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  The court "must take all of the factual allegations in the complaint as true," but is "not bound to accept as true a legal conclusion couched as a factual allegation." Id. (internal quotation marks omitted).  Factual pleadings merely consistent with a defendant's liability are insufficient to survive a motion to dismiss because they establish only that the allegations are possible rather than plausible. See id. at 678–79.  The court should grant 12(b)(6) relief if the complaint lacks either a cognizable legal theory or facts sufficient to support a cognizable legal theory. See Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1990).

1

**b.      Equitable-Indemnity Claim**

2      The Boy Scouts contend that the claim for equitable indemnity must be

3   dismissed as duplicative because equitable indemnity is a subset of comparative

4   indemnity, not a distinct cause of action.  (Doc. No. 77-1 at 7.)  Williams and

5   Forever Resorts counter that equitable indemnity and comparative indemnity are

6   distinct causes of action because "comparative indemnity is tort-based," while

7   "equitable indemnity can be contract-based."  (Doc. No. 98 at 9.)

8      Williams and Forever Resorts do not identify any contract to support such a

9   claim, and, in the context of torts, the California Supreme Court has instructed that

10   "there are not two separate equitable indemnity doctrines in California, but a single

11   comparative indemnity doctrine which permits partial [or total] indemnification on

12   a comparative fault basis in appropriate cases."  Far West Fin. Corp. v. D&S Co.,

13   46 Cal. 3d 796, 808 (1988) (internal quotation marks omitted).

14      Absent allegations to support the existence of a claim for contract-based

15   indemnification, the court will treat the claims for equitable and comparative

16   indemnity as a single, tort-based claim for comparative indemnity.

17

**c.      Comparative-Indemnity Claim**

18      The Boy Scouts challenge the comparative-indemnity claim on two grounds.

19   First, they contend that the allegations are insufficient because they are "devoid of

20   any mention of joint and several liability."  (Doc. No. 77-1 at 6.)  Forever Resorts

21   counters that it has adequately alleged that the Boy Scouts caused or contributed to

22   Kormylo's injuries.  (Doc. No. 98 at 8.)

23      Under California law, "[t]he elements of a cause of action for indemnity

24   are (1) a showing of fault on the part of the indemnitor and (2) resulting damages

25   to the indemnitee for which the indemnitor is equitably responsible."  Bailey v.

26   Safeway, Inc., 199 Cal. App. 4th 206, 217 (2011) (ellipsis and internal quotation

27   marks omitted).

28      This formulation contains no magic words, and federal pleading requirements

do not require any.  Given the context of this case—Williams and Forever Resorts seek to implead the Boy Scouts on the theory that they may be liable for some or all of Kormylo's injuries—there is no doubt about the nature of the claim.  The court, therefore, declines to dismiss the indemnity claim against the Boy Scouts on this ground.

Second, the Boy Scouts contend that the indemnity claim fails because the allegations do not contain facts to show duty, breach, or causation sufficient to support a negligence claim.  (Doc. No. 77-1 at 3–5.)  Williams and Forever resorts counter that negligence claims require less factual explication than other claims do, and their allegations are sufficient because they "provide[] sufficient notice" to the Boy Scouts.  (Doc. No. 98 at 7.)

But, as the court noted above, the Supreme Court has instructed that a complaint must contain "enough facts to state a claim to relief that is plausible on its face," Bell Atl. Corp., 550 U.S. at 570, and the court is "not bound to accept as true a legal conclusion couched as a factual allegation," Iqbal, 556 U.S. at 678. Here, the court focuses on the plausibility of the negligence claim because the indemnity claim is premised on it.  As the Boy Scouts point out, "there can be no indemnity without liability."  Major Clients Agency, 67 Cal. App. 4th at 1126.

Under California law, "[a]n action in negligence requires a showing (1) that the defendant owed the plaintiff a legal duty, (2) that the defendant breached the duty, and (3) that the breach was a proximate or legal cause of the injuries suffered by the plaintiff."  Mintz v. Blue Cross of Cal., 172 Cal. App. 4th 1594, 1609 (2009) (numbers added and internal quotation marks omitted).  "A duty of care may arise through statute or by contract.  Alternatively, a duty may be premised on the general character of the activity in which the defendant engaged, the relationship between the parties or even the interdependent nature of human society."  J'Aire Corp. v. Gregory, 24 Cal. 3d 799, 803 (1979).

The allegations in the amended third-party complaint regarding the Boy

1  Scouts' negligence are as follows:

> BSA required and provided the Tour and Activity Plan and required proper supervision and training for aquatic activities. Therefore, BSA has the duty to make sure that Tour and Activity Plans are properly approved and authorized, including having sufficient qualified adult leaders who are adequately trained and ensuring safety requirements are followed. BSA-SD required the filing of a Tour and Activity Plan and required proper supervision and training for aquatic activities. Therefore, BSA-SD has the duty to make sure that Tour and Activity Plans are properly approved and authorized, including having sufficient qualified adult leaders who are adequately trained and ensuring safety requirements are followed. BSA and BSA-SD were negligent in training the Adult Leaders of BSA Team 719 and approving and authorizing the Tour and Activity plan which caused or contributed to [Kormylo's] injuries, if any.

(Doc. No. 58 ¶¶ 34–36.)

As Williams and Forever Resorts point out, these allegations identify that the Boy Scouts required a tour and activity plan and the training of adult leaders, and that Kormylo was injured while attending a Boy Scout authorized trip. (Doc. No. 98 at 7.)

There are several problems with this, however. First, there are no facts regarding how the Boy Scouts' conduct failed to comport with a legally cognizable duty of care toward Kormylo. That the Boy Scouts impose certain requirements on themselves does not mean that the law imposes those same requirements. Second, there are no facts to suggest how the Boy Scouts' purported breach of duty was the actual and proximate cause of Kormylo's injuries. If the complaint were comparable to one alleging simple negligent driving, as Williams and Forever Resorts contend it is, context and common sense might fill in the blanks. Here, however, Williams and Forever Resorts seek to hold the Boy Scouts liable for a negligent act that occurred days later in a different state under the watch of numerous private individuals. The theory is not vicarious liability based on some form of agency, but that BSA and BSA-SD themselves were directly negligent. Such an attenuated theory needs more than conclusions and the recitation of the elements of a negligence claim to be plausible. Here the necessary facts are missing.

13cv511

1    Absent facts to support a plausible negligence claim, there is no plausible

2    indemnity claim.  Accordingly, the court grants the Boy Scouts' motion to dismiss

3    the indemnity claim.

4                    **d.    Declaratory-Judgment Claim**

5    The Boy Scouts contend that the claim for declaratory judgment should be

6    dismissed because declaratory judgment is a remedy, not an independent cause of

7    action, and the amended third-party complaint did not contain any other viable

8    claims for relief.  (Doc. No. 77-1 at 9.)  Williams and Forever Resorts counter that

9    their claims are sufficiently pleaded and viable.  (Doc. No. 98 at 11–12.)  Because

10   the court has dismissed the indemnity claim(s), the declaratory-judgment claim

11   premised on them is dismissed as well.

12                   **e.    Leave to Amend**

13   The Boy Scouts ask the court to dismiss the claims against them with

14   prejudice because "the theory underlying the claims—that [BSA] and [BSA-SD]

15   are somehow liable to an adult who was injured in an accident caused by a non-boy

16   scout third party, simply because the adult volunteers for a scouting unit filled out an

17   activity form—is nonsensical, contrary to law, and inadequately alleged."  (Doc. No.

18   77 at 2.)  The court construes this as a request for dismissal without leave to amend.

19   Forever Resorts and Williams assert that they can and will allege additional facts to

20   cure any defects resulting in dismissal.  (Doc. No. 98 at 12.)

21    "Dismissal with prejudice and without leave to amend is not appropriate

22   unless it is clear . . . that the complaint could not be saved by amendment."

23   Eminence Capital, LLC v. Aspeon, Inc., 316 F.3d 1048, 1052 (9th Cir. 2003).

24   The court has found that the amended third-party complaint lacked various

25   essential facts.  Hence, the question is whether any set of facts could be alleged

26   that could result in a viable theory.  The Boy Scouts contend that no relevant legal

27   duty exists and that Williams was an intervening proximate cause.  However, this

28   is the first dismissal of these claims, and, at this early stage of motion practice,

1   the court is not convinced that any claim premised on facts consistent with the

2   proffered liability theory of the amended third-party complaint is certain to fail

3   as a matter of law.  The court, therefore, grants Williams and Forever Resorts'

4   request for leave to amend.  Any amended third-party complaint must be filed within

5   fourteen days of entry of this order and should address the defects identified here.

6   **B.      The Boy Scouts' Motion to Strike**

7          Third-Party Defendants the Boy Scouts move to strike the attorney-fee

8   allegations from the amended third-party complaint, (Doc. No. 78), pursuant to

9   Federal Rule of Civil Procedure 12(f), which permits a court to strike from a

10  pleading any "redundant, immaterial, impertinent, or scandalous matter."  Because

11  the court has dismissed the claims asserted against the Boy Scouts in the amended

12  third-party complaint, the motion to strike is denied on grounds that it is moot.

13  The court notes, however, that any renewed allegations regarding the Boy Scouts'

14  liability for Williams and Forever Resorts' attorney fees should reflect a colorable

15  theory of recovery.

16  **C.      Mark Allen and Chris Waddell's Motion to Dismiss**

17         Third-Party Defendants Mark Allen and Chris Waddell seek to dismiss the

18  claims against them for lack of personal jurisdiction.  (Doc. No. 90.)  The court

19  reviews the relevant legal standards before turning to the parties' arguments.

20         **1.      Legal Standards**

21         Federal Rule of Civil Procedure 12(b)(2) allows litigants to move to dismiss

22  a case for lack of personal jurisdiction.  "The party seeking to invoke the court's

23  jurisdiction bears the burden of establishing that jurisdiction exists."  Scott v.

24  Breeland, 792 F.2d 925, 927 (9th Cir. 1986).  When a defendant has moved to

25  dismiss for lack of personal jurisdiction, "the plaintiff is obligated to come forward

26  with facts, by affidavit or otherwise, supporting personal jurisdiction."  Id. (internal

27  quotation marks omitted).

28         When, as is the case here, the motion is based on written materials and not

an evidentiary hearing, "the plaintiff need only make a prima facie showing of jurisdictional facts." Schwarzenegger v. Fred Martin Motor Co., 374 F.3d 797, 800 (9th Cir. 2004) (internal quotation marks omitted). "[U]ncontroverted allegations in the complaint must be taken as true." Id. But the court may not assume the truth of such allegations if they are contradicted by affidavit. See Data Disc, Inc. v. Sys. Tech. Assocs., Inc., 557 F.2d 1280, 1284 (9th Cir. 1977). If there are conflicting affidavits, conflicts must be resolved in the plaintiff's favor. See Mattel, Inc. v. Greiner & Hausser GmbH, 354 F.3d 857, 861–62 (9th Cir. 2003). If the material facts are controverted or if the evidence is inadequate, the court has discretion to permit limited discovery and to hold an evidentiary hearing to resolve the contested issues. Data Disc., 557 F.2d at 1285 & n.1.

The court can exercise personal jurisdiction over a non-resident defendant "if jurisdiction is proper under California's long-arm statute and if that exercise accords with federal constitutional due process principles." Fireman's Fund Ins. Co. v. Nat'l Bank of Coops., 103 F.3d 888, 893 (9th Cir.1996). "California's long-arm statute authorizes the court to exercise personal jurisdiction over a non-resident defendant on any basis not inconsistent with the California or federal Constitution. The statutory and constitutional requirements therefore merge into a single due process test." Id. (citation omitted). Due process requires that the defendant has certain minimum contacts with the forum state "such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945).

Personal jurisdiction can be either general or specific. See Fields v. Sedgwick Assoc. Risks, Ltd., 796 F.2d 299, 301 (9th Cir.1986). General jurisdiction permits a defendant to be haled into that state's court for any reason. See id. A court has general personal jurisdiction over a defendant who has "substantial" or "continuous and systematic" contacts with the forum state. Id. By contrast, specific jurisdiction allows the court to exercise jurisdiction over a defendant only if his forum-related

acts gave rise to the action before the court.  See id. at 302.  For the court to have specific personal jurisdiction, "(1) the defendant must have done some act purposefully to avail himself of the privilege of conducting activities in the forum; (2) the claim must arise out of the defendant's forum-related activities; and (3) the exercise of jurisdiction must be reasonable."  Id. "If any of the three requirements is not satisfied, jurisdiction in the forum would deprive the defendant of due process of law."  Omeluk v. Langsten Slip & Batbyggeri A/S, 52 F.3d 267, 270 (9th Cir. 1995).

Once the court determines that a defendant has the requisite contacts with the forum state, jurisdiction is presumptively reasonable.  See Roth v. Garcia Marquez, 942 F.2d 617, 625 (9th Cir. 1991).  "To rebut that presumption, a defendant must present a compelling case that the exercise of jurisdiction would, in fact, be unreasonable."  Id. (italics and internal quotation marks omitted).  When assessing reasonableness, whether in the context of general or specific jurisdiction, the court uses the same seven-factor test.  See Tuazon v. R.J. Reynolds Tobacco Co., 433 F.3d 1163, 1175 (9th Cir. 2006); Amoco Egypt Oil Co. v. Leonis Navigation Co., 1 F.3d 848, 851 (9th Cir. 1993).  The court considers

> (1) the extent of the defendant's purposeful interjection into the forum state's affairs; (2) the burden on the defendant of defending in the forum; (3) the extent of conflict with the sovereign of the defendant's state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of the forum to the plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum.

Terracom v. Valley Nat'l Bank, 49 F.3d 555, 561 (9th Cir. 1995) (brackets omitted).  The court balances all factors; none is dispositive.  See id.

### 1.    Mark Allen

Allen contends that the court lacks personal jurisdiction over him because he moved to Utah and became domiciled there as of July 18, 2014, more than a month before the amended third-party complaint was filed.  (Doc. No. 90-1 at 4.) In support of his motion, he submitted a sworn affidavit attesting to those facts.

(Doc. No. 90-2.)  Williams and Forever Resorts counter that it is undisputed that Allen was a California citizen in July 2012, when the underlying events occurred, and also on June 30, 2014, when Williams and Forever Resorts requested leave to file the amended third-party complaint.  (Doc. No. 96 at 6–8.)  The parties thus dispute the appropriate time for assessing general jurisdiction.

### a.  The Relevant Time for Assessing General Jurisdiction

The Ninth Circuit has indicated that "general [personal] jurisdiction is determined at the time the suit was filed."  Bauman v. DaimlerChrysler Corp., 644 F.3d 909, 913–14 n.7 (9th Cir. 2011), overruled on other grounds by Daimler AG v. Bauman, — U.S. —, 134 S. Ct. 746 (2014); see also Wells Fargo & Co. v. Wells Fargo Express Co., 556 F.2d 406, 422 (9th Cir. 1977) (general personal jurisdiction "must be shown at the time suit was filed").  Although these cases do not address the timing issue in depth, the court is not aware of any holdings to the contrary and assumes that this is the correct rule.

But the analysis does not end there.  Once the relevant date is determined, most courts look back from that date a "reasonable time," typically between three and seven years, to assess whether there are continuous and systematic contacts sufficient for general personal jurisdiction.  4 Wright et al., Federal Practice & Procedure § 1067.5 & n.11.75 (3d ed. 2002 & Supp. 2014); see Metro. Life Ins. Co. v. Robertson-Ceco Corp., 84 F.3d 560, 569–70 (2d Cir. 1996) ("[O]ur review of general jurisdiction cases reveals that contacts are commonly assessed over a period of years prior to the plaintiff's filing of the complaint.").  For example, as these sources observe, the Supreme Court looked back over a seven-year period to determine whether there was general personal jurisdiction in Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 409–11 (1984), and the Ninth Circuit examined contacts over a three-year period in Gates Learjet Corp. v. Jensen, 743 F.2d 1325, 1329–31 (9th Cir. 1984).

### b.  Allen's Contacts

Applying the first step in the analysis, the relevant time for assessing general jurisdiction over Allen is August 13, 2014, the date the initial third-party complaint was filed against him.  The amended third-party complaint, which was filed on August 25, 2014, to correct the name of Third-Party Defendant McCloskey, relates back to the date of the original filing under the relation-back doctrine of Federal Rule of Civil Procedure 15(c).  Applying the second step, the court looks back from August 13, 2014, to assess the quality of his contacts in the preceding years.  In this case, the court need not look back far, as it is undisputed that Allen was domiciled in California until July 18, 2014, one month before the initial third-party complaint was filed.

In light of those facts, the court finds that Allen's domicile in California during the underlying events and in the time leading up to the filing of the third-party complaint was a contact pervasive enough to subject him to general jurisdiction in California, at least for claims arising during the time he was domiciled in California.  The court notes that there has been no suggestion that Allen moved out of state for any improper purpose, but that a contrary conclusion in this case might encourage potential defendants to move out of state in an effort to defeat general personal jurisdiction.

### c.   **Reasonableness**

Allen contends that if the court concludes that it has jurisdiction over him, exercising that jurisdiction would be unreasonable because the underlying events occurred in Nevada; many witnesses and most of the evidence are located in California; he is not domiciled in California and does not live there; and subjecting him to suit there would penalize him.  (Doc. No. 90-1 at 7–8.)

As noted above, at this point, "[t]he burden is on the defendant to present a compelling case that the exercise of jurisdiction would, in fact, be unreasonable." Amoco, 1 F.3d at 85.  The court considers the following factors:

(1) the extent of the defendant's purposeful interjection into the forum

13cv511

state's affairs; (2) the burden on the defendant of defending in the forum; (3) the extent of conflict with the sovereign of the defendant's state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of the forum to the plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum.

Terracom, 49 F.3d at 561 (brackets omitted).

### i.     The Extent of Purposeful Interjection

"This inquiry parallels the question of minimum contacts." Tuazon, 433 F.3d at 1175 n.5. Because Allen has sufficient contacts to subject him to general jurisdiction in California, this factor favors jurisdiction in California.

### ii     The Burden on Allen

The burden on Allen of litigating in California is equal to the burden Williams and Forever Resorts would face in litigating their claims in a separate lawsuit in Utah. "Where burdens are equal, this factor tips in favor of the defendant because the law of personal jurisdiction is primarily concerned with the defendant's burden." Ziegler v. Indian River Cnty., 64 F.3d 470, 475 (9th Cir. 1995) (internal quotation marks omitted). This factor weighs against the exercise of jurisdiction in California.

### iii.    The Extent of Conflict with the Sovereignty of Utah

This factor concerns the extent to which the court's exercise of jurisdiction in California would conflict with the sovereignty of Utah, Allen's new state of domicile. See Core-Vent Corp. v. Nobel Indus. AB, 11 F.3d 1482, 1489 (9th Cir. 1993). This factor carries less weight when the litigation is against a citizen of a sister state, as opposed to a citizen of a foreign country. See id. This litigation appears to create little conflict with Utah's sovereignty, as none of the parties seek to litigate there, there is no basis for applying Utah law in this dispute, and Allen is only recently a domiciliary of the state. However, because neither party has addressed this factor, the court views it as neutral.

### iv.    California's Interest

"A state generally has a manifest interest in providing its residents with a

13cv511

convenient forum for redressing injuries inflicted by out-of-state actors." <u>Burger King v. Rudzewicz</u>, 471 U.S. 462, 473 (1985).  In this case, although Plaintiffs in the underlying lawsuit are California residents, the claims at issue in the present motion are those of Third-Party Plaintiffs Williams and Forever Resorts.  Because they are citizens of Nevada and Arizona, respectively, California has little direct interest in redressing their injuries.  On the other hand, California has an indirect interest in their claims because if they are found liable in the underlying lawsuit and if they are successful in their third-party claims, more resources will (at least theoretically) be available to compensate the California-based Plaintiffs in the underlying lawsuit. This factor favors jurisdiction in California, but because the interest is attenuated, its weight is minimal.

### v.      The Most Efficient Resolution

This factor focuses on "where the witnesses and the evidence are likely to be located."  <u>See</u> <u>Terracom</u>, 49 F.3d at 561.  Allen states that "many witnesses and most evidence are located in San Diego," (Doc. No. 90-1 at 7), and that they are "more accessible in California,"  (<u>id.</u> at 8).  Moreover, given that the claims at issue here are third-party claims related to the claims in the underlying lawsuit, and given that the court has jurisdiction over the remaining third-party defendants, it will be more efficient to resolve the underlying lawsuit and the third-party claims in the same forum.  This factor favors jurisdiction in California.

### vi.      Convenient and Effective Relief for Plaintiff

If California is not the proper forum, Williams and Forever Resorts would likely be required to litigate two separate lawsuits, one against Allen in Utah (or perhaps Nevada), and another against the remaining adult leaders in California. They would undoubtedly find that inconvenient.  However, in the Ninth Circuit, "the plaintiff's convenience is not of paramount importance."  <u>Dole Food Co., Inc. v. Watts</u>, 303 F.3d 1104, 1116 (9th Cir. 2002).  Accordingly, this factor favors jurisdiction in California, but not strongly.

13cv511

1

### vii.    Availability of an Alternative Forum

2      Utah and perhaps Nevada are alternative forums.  However, the existence of

3 an alternative forum "becomes an issue only when the forum state is shown to be

4 unreasonable."  CollegeSource, Inc. v. AcademyOne, Inc., 653 F.3d 1066, 1080

5 (9th Cir. 2011).  The court concludes below that Allen has not made that showing.

6

### viii.    Balancing the Factors

7      Out of all of the factors, only one weighs against jurisdiction in California.

8 The remaining six either favor jurisdiction in the state or are neutral.  Accordingly,

9 the court finds that Allen has not shown that subjecting him to general jurisdiction

10 in California would be unreasonable.  The court, therefore, denies Mark Allen's

11 motion to dismiss the claims against him for lack of personal jurisdiction.

12

### 2.    Chris Waddell

13      Waddell contends that the court lacks personal jurisdiction over him because

14 at all relevant times he was domiciled in Lima, Peru, (Doc. No. 90-1 at 4), and the

15 amended third-party complaint does not contain any facts to establish that he had

16 minimum contacts with California, (id. at 6–7).  In support of his motion, he

17 submitted a sworn affidavit.  (Doc. No. 90-3.)  In the affidavit he states that at all

18 relevant times he has been domiciled in Peru; that in July 2012 he and his son, a

19 former Boy Scout, were visiting San Diego when they were invited to attend the

20 trip to Lake Mead; that he was not a leader on the trip and had nothing to do with

21 planning or organizing it; and that he and his son left Nevada and traveled to

22 Washington D.C. the day before Kormylo's accident.  (Id.)

23      Williams and Forever Resorts do not dispute that Waddell was and is

24 domiciled in Peru or that he left Nevada before the accident occurred.  They

25 contend, however, that the court has specific jurisdiction over him because he

26 purposefully availed himself of the privilege of conducting activities in California by

27 accepting the invitation and the responsibility of being an adult leader on the trip,

28 when he knew that it was a BSA-authorized trip subject to Boy Scout rules and

1    regulations, and when he was aware that all of the other participants on the trip were

2    California citizens.  (Doc. No. 96 at 9–10.)

3           **a.     Legal Standards**

4           In cases involving negligent torts like the one alleged here (as opposed

5    to intentional torts), courts in the Ninth Circuit apply the ordinary purposeful-

6    availment analysis that is used for specific jurisdiction in contract and stream-of-

7    commerce cases.  See Holland Am. Line Inc. v. Wartsilla N. Am., Inc., 485 F.3d

8    450, 460 (9th Cir. 2007).  Under that analysis, "(1) the defendant must have

9    done some act purposely to avail himself of the privilege of conducting activities

10   in the forum; (2) the claim must arise out of the defendant's forum-related activities;

11   and (3) the exercise of jurisdiction must be reasonable."  Fields, 796 F.2d at 301.  "If

12   any of the three requirements is not satisfied, jurisdiction in the forum would deprive

13   the defendant of due process of law."  Omeluk, 52 F.3d at 270.

14          To satisfy the first prong, the defendant must "engage in some form of

15   affirmative conduct allowing or promoting the transaction of business within the

16   forum state."  Doe v. Am. Nat'l Red Cross, 112 F.3d 1048, 1051 (9th Cir. 1997)

17   (internal quotation marks omitted).  "This requirement ensures that a defendant will

18   not be haled into a jurisdiction solely as a result of random, fortuitous, or attenuated

19   contacts, or of the unilateral activity of another party or third person."  Id. (internal

20   quotation marks omitted).  To satisfy the second prong, there must be a nexus

21   between the forum and the claim.  See id.; Holland Am., 485 F.3d at 460.  The

22   required nexus exists if the claim "would not have happened but for the forum-

23   related activities."  Omeluk, 52 F.3d at 271.

24          **b.     Waddell's Minimum Contacts**

25          In this case, assuming that Williams and Forever Resorts' assertions

26   regarding Waddell's conduct in California are true, they are insufficient to show that

27   he purposefully availed himself of the laws of California so that it comports with due

28   process to subject him to jurisdiction in the state.  His mere acceptance of the

1    invitation and assumption of leadership of the trip in California do not amount to an
2    invocation of the protections of California laws.

3         Moreover, and perhaps more importantly, there is an insufficient nexus
4    between his conduct in California and the accident, which occurred days later in
5    Nevada, after his departure to Washington D.C., allegedly as a result of his
6    negligence and the negligence of numerous other actors.  His contacts with
7    California are too minimal, and the link between those contacts and the accident in
8    Nevada are simply too remote, to subject him to specific jurisdiction in California.

9         Further, leaving aside these difficulties, even if the court were to conclude that
10   it had jurisdiction, exercising jurisdiction would likely be unreasonable.  Waddell is
11   undisputedly a domiciliary of a foreign country, which raises significant concerns
12   about impinging on foreign sovereignty and the difficulty of litigating at a distance.
13   Moreover, this case is premised on negligence, and Ninth Circuit has instructed that
14   "it may be unreasonable to subject an out-of-state defendant to jurisdiction where the
15   allegedly tortious act is committed outside of the forum state, having only an effect
16   within the state, if the act is negligent rather than purposeful."  Data Disc., 557 F.2d
17   at 1288.

18        In light of those considerations, the court grants Third-Party Defendant Chris
19   Waddell's motion to dismiss the claims against him for lack of personal jurisdiction.

20        **4.    Request for Jurisdictional Discovery**
21        Williams and Forever Resorts request an opportunity for limited jurisdictional
22   discovery.  (Doc. No. 96 at 11.)  Jurisdictional discovery "is necessary, however,
23   only if it is possible that the plaintiff can demonstrate the requisite jurisdictional
24   facts if afforded that opportunity."  St. Clair, 880 F.2d at 201.  "Where, as here,
25   the extra-pleading material demonstrates that the controlling questions of fact are
26   undisputed, additional discovery would be useless."  Id. at 202.  The court, therefore,
27   denies Williams and Forever Resorts' request for jurisdictional discovery.

28        **5.    Leave to Amend**

13cv511

1    Williams and Forever Resorts request leave to amend their complaint to
2    remedy any defects in the jurisdictional allegations.  (Doc. No. 96 at 11.)  Allen
3    and Waddell assert that amendment would be futile because any attempt to cure
4    the jurisdictional defects "would run afoul of Federal Rule of Civil Procedure 11"
5    and would only be a dilatory tactic.  (Doc. No. 99 at 9–10.)

6    Federal Rule of Civil Procedure 15(a) instructs that leave to amend "shall be
7    freely given when justice so requires."  However, courts can dismiss without leave
8    to amend if "the allegation of other facts consistent with the challenged pleading
9    could not possibly cure the deficiency."  Swartz v. KPMG LLP, 476 F.3d 756, 761
10   (9th Cir. 2007) (internal quotation marks omitted).

11   In this case, there appear to be no set of facts consistent with the pleadings and
12   undisputed facts that could cure the numerous deficiencies in the jurisdictional
13   allegations regarding Waddell.  Even if Williams and Forever resorts can show
14   purposeful availment, they still cannot overcome the problems with causation and
15   reasonableness.  Accordingly, the court denies Williams and Forever Resorts'
16   request for leave to amend the jurisdictional allegations against Chris Waddell.

17                                  **CONCLUSION**

18   The court GRANTS the Boy Scouts' motion to dismiss for failure to state a
19   claim (Doc. No. 77), but also GRANTS Williams and Forever Resorts' request for
20   leave to amend the allegations regarding the Boy Scouts.  Any amended third-party
21   complaint must be filed within fourteen (14) days after entry of this order and should
22   remedy the defects identified in this order.

23   The court DENIES the Boy Scouts' motion to strike the attorney-fee
24   allegations, (Doc. No. 78), on grounds that it is moot.  Any renewed attorney-fee
25   allegations against the Boy Scouts should reflect a colorable theory of recovery.
26   ///

27   Finally, the court GRANTS IN PART AND DENIES IN PART Mark Allen
28   and Chris Waddell's motion to dismiss for lack of personal jurisdiction.  (Doc. No.

1   90.)  The court DENIES the motion as to Mark Allen.  The court GRANTS the

2   motion as to Chris Waddell and dismisses him for lack of personal jurisdiction.

3   Finally, the court DENIES Williams and Forever Resorts' requests for jurisdictional

4   discovery and for leave to amend the jurisdictional allegations regarding Waddell.

5        IT IS SO ORDERED.

6   DATED:  January 6, 2015

7   _____

8   Hon. Jeffrey T. Miller
    United States District Judge

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

13cv511