UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NICHOLAS KORMYLO, M.D.; KIMBERLY KORMYLO; BRYCE KORMYLO, by and through his guardian ad litem KIMBERLY KORMYLO,<br><br>                                    Plaintiffs,<br><br>vs.<br><br>FOREVER RESORTS, LLC dba CALVILLE RESORT & MARINA; KENNETH WILLIAMS, and DOES 1-50,<br>                                    Defendants. | Case No.: 13-cv-00511-JM (WVG)<br><br>**MEMORANDUM AND ORDER DENYING PLAINTIFFS' MOTION TO COMPEL THE DEPOSITION OF REX MAUGHAN**<br><br>**[Doc. No. 133]** |
| AND ALL RELATED THIRD-PARTY ACTIONS | |

Before the Court is Plaintiffs' motion to compel the deposition of Rex Maughan ("Maughan"), president of Defendant Forever Resorts, LLC ("Forever Resorts"), filed on August 31, 2015. (Doc. No. 133.) On September 4, 2015, Defendants filed an opposition to Plaintiffs' motion. (Doc. No. 134.) As discussed below, the Court finds that Maughan's deposition is not warranted and Plaintiffs' motion is therefore DENIED WITH PREJUDICE.

1

This negligence action arises from personal injuries suffered by Dr. Nicholas Kormylo ("Kormylo") while swimming at the Callville Bay Resort & Marina ("Callville Bay"), a facility managed by Forever Resorts at Lake Mead, Nevada. (Doc. No. 1, at 1-9.) Although the cause of Kormylo's injuries is disputed, Plaintiffs' theory is that Kormylo was injured when he was struck by a chase boat operated by a Forever Resorts employee, Kenneth Williams ("Williams"). (Id. at 7.) The chase boat that allegedly struck Kormylo was registered to Forever Resorts' president and founder Rex Maughan. (Doc. No. 133-2.) Maughan is not a named defendant in this action.

In support of the motion, Plaintiffs argue that Maughan's testimony is required to defeat Forever Resorts' twelfth affirmative defense, in which Forever Resorts asserts that it is entitled to limit its liability under the Limitation of Liability Act, 46 U.S.C. § 30501, et seq. ("Limitation Act"). (Doc. No. 133, at 5-9.) Plaintiffs note that the owner of a vessel who fails to adequately train its crew is not entitled to limit liability under the Limitation Act and that Maughan's deposition is therefore necessary "to establish this lack of training and supervision of Forever Resorts employees." (Id. at 8.) Plaintiffs also argue that Maughan's "lack of knowledge" regarding employee training at Callville Bay "may … be the point." (Id. at 9.) Plaintiffs assert that denial of the request to depose Maughan will result in "extreme prejudice that would inhibit Plaintiffs' ability to defeat an affirmative defense that would significantly reduce their damages at trial." (Id. at 2.)

Defendants respond that Forever Resorts has raised the Limitation Act on its own behalf and that Maughan's "knowledge or lack thereof" is therefore "completely irrelevant." (Doc. No. 134, at 5-7.) Defendants also argue that since relevant information can be obtained from lower level employees, it is improper for Plaintiffs to seek to depose Maughan, "an official at the highest level or 'apex' of corporate management." (Id. at 7-9.) In this regard, Defendants note that Plaintiffs have deposed fifteen current and former Forever Resorts employees and will shortly depose Forever Resorts Executive Vice President John Schoppmann ("Schoppmann"). (Id. at 4.) Defendants also submit Schoppmann's declaration stating that Forever Resorts has over seventy properties around

the globe and that Maughan, its president, has no involvement with "boat purchases, maintenance, or operations," or with "the hiring, supervision, or training" of marina employees at Callville Bay. (Doc. No. 134-5, at 2-3.)

The Federal Rules of Civil Procedure provide for liberal discovery of "any nonprivileged matter that is relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1). Discovery is not unbounded, however, and district courts are obligated to limit discovery that is "unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive." Fed. R. Civ. P. 26(b)(2)(C)(i). Discovery may also be limited when "the burden … of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(2)(C)(iii). The party seeking to avoid discovery bears the burden of showing that good cause exists to deny it. Powertech Technology, Inc. v. Tessera, Inc., 2013 WL 3884254 *1 (N.D. Cal., July 26, 2013).

Deposition notices directed at executives at the highest levels of corporate management create the potential for harassment and abuse of the discovery process. In scrutinizing requests for so-called "apex depositions," courts have considered (1) whether the high-level deponent has unique, non-repetitive knowledge relevant to the facts at issue in the case, and (2) whether the party seeking the deposition has exhausted other less burdensome discovery methods, such as interrogatories and deposition notices directed at lower level employees. See WebSideStory, Inc. v. NetRatings, Inc., 2007 WL 1120567 *3 (S.D. Cal., April 6, 2007); Apple Inc. v. Samsung Electronics Co., Ltd, 282 F.R.D. 259, 262 (N.D. Cal. 2012). It is frequently said that the prospective deponent's "claimed lack of knowledge, by itself, is insufficient to preclude a deposition." Id. (quoting In re Google Litig., 2011 WL 4985279 *2 (N.D.Cal., Oct. 19, 2011)). But it is also true that where the relevant information may be obtained from other sources and where the high level executive's knowledge of the facts, or lack thereof, is not itself at issue in the case, a deposition of the high level executive may not be warranted. See e.g. Affinity Labs of Texas v. Apple, Inc., 2011 WL 1753982 *16 (N.D. Cal., May 9, 2011); K.C.R. v. County of Los Angeles, 2014 WL 3434257 *7 (C.D. Cal., July 11, 2014).

Defendants assert that Maughan lacks unique knowledge of the facts at issue in this case. They have submitted the declaration of Forever Resorts Executive Vice President John Schoppmann,[1] stating that Maughan was not involved in either the purchase, maintenance or operation of the chase boat that allegedly struck Kormylo or in the hiring, supervision, or training of employees at Callville Bay. (Doc. No. 134-5, at 3.) Defendants have also submitted the declaration of Kim Roundtree, general manager at Callville Bay, conceding that the chase boat was registered to "Rex Maughan dba Callville Bay Resort & Marina," but asserting that Maughan "has never been involved in the chase boat's maintenance or use."[2] (Doc. No. 134-6, at 2.) Finally, Defendants have submitted excerpts from the depositions of Williams and two other Forever Resorts employees indicating that the hiring, training and supervision of chase boat operators was conducted locally at Callville Bay. (Docs. No. 134-2, 134-3 and 134-4.)

In contrast, Plaintiffs have submitted no evidence to contradict Defendants' account of Maughan's lack of involvement in operations at Callville Bay or suggesting that Maughan has information relevant to this case. This omission is particularly startling because Plaintiffs have had ample opportunity to develop facts that would support this motion. Up to this point, Plaintiffs have taken the depositions of fifteen current and former Forever Resorts employees, including Rod Taylor, the Forever Resorts Regional Vice President overseeing Callville Bay, and the Callville Bay rental managers who directly supervised Williams before, during, and after the incident. (Doc. No. 134, at 4.) From Plaintiffs' silence, the Court infers that none of these depositions yielded evidence pointing towards Maughan's involvement in any aspect of boat operations at Callville Bay. The

---

[1] Schoppmann states in his declaration that it is he who is responsible for and oversees "the management of all of Forever Resorts' properties in the United States of America, including [Callville Bay]." (Doc. No. 134-5, at 2.)

[2] Curiously, Defendants do not submit a declaration from Maughan, the one person who can definitively and unequivocally reveal the level and depth of his personal knowledge, or lack thereof, of the specific areas in question. Despite this glaring omission, the Court is convinced that Maughan's deposition is not justified.

Court therefore gives credence to Defendants' assertion that Maughan delegated these operations in their entirety to managers lower down the food chain.

Perhaps realizing that Maughan has little to say about the facts and circumstances of this incident, Plaintiffs place all their cards on the Limitation Act argument. Enacted in 1851 and originally intended as a boon to the American shipping industry, see generally Complaint of Dillahey, 733 F. Supp. 874, 875-77 (D.N.J. 1990), the Limitation Act "is a maritime exception to the common law doctrine of respondeat superior," Illinois Constructors Corp. v. Logan Transp., Inc., 715 F. Supp. 872, 880 (N.D. Ill. 1989). Under the statute, the liability of a vessel's owner is, in certain circumstances, limited to no more than "the value of the vessel and pending freight." 46 U.S.C. § 30505. As relevant here, this limitation applies to "any act, matter, or thing, loss, damage or forfeiture, done, occasioned, or incurred, without the privity or knowledge of such owner."[3] 46 U.S.C. § 30505 (emphasis added).

The owner of a vessel that fails to properly train and supervise its crew is held to have privity and knowledge of the acts that caused the accident and is not entitled to limit its liability. See Hercules Carriers, Inc. v. State of Florida, 768 F.2d 1558, 1576-77 (11th Cir. 1985). Plaintiffs contend that Maughan, as the registered owner of the chase boat, has critical testimony to give regarding Williams' training and supervision. Not so. The relevant "owner" for purposes of the Limitation Act is the owner that seeks to limit its liability. Here, that "owner" is ostensibly Forever Resorts, not Maughan.[4]

---

[3] As one court has described it, the purpose of the statute is to protect "the physically remote owner who, after the ship breaks ground, has no effective control over his waterborne servants." Tittle v. Aldacosta, 544 F.2d 752, 756 (5th Cir. 1977). Despite its mercantile history, however, the Limitation Act has been held to apply to vessels as small as jet skis. See Keys Jet Ski v. Kays, 893 F.2d 1225, 1230 (11th Cir. 1990).

[4] The Court expresses no opinion as to whether Forever Resorts qualifies as an owner under the Limitation Act. See generally In re American Milling Co., Ltd., 409 F.3d 1005, 1014 (8th Cir. 2005) ("The question … is whether a party who claims the status of owner exercised sufficient dominion and control over the vessel to be an owner pro hac vice even though neither technically a title-holding owner nor a charterer.").

To prevail on this defense, Forever Resorts must demonstrate that it "lacked privity and knowledge of any condition rendering the vessel unseaworthy and of any operational negligence." In re Dieber, 793 F. Supp. 2d 632, 635 (S.D.N.Y. 2011). The negligence of supervisory employees, however, defeats the Limitation Act defense. See U.S. v. Standard Oil of California, 495 F.2d 911, 917 (9th Cir. 1974) (imputing to employer the negligence of coast guard duty officer delegated full responsibility for patrol boat). The witnesses best situated to speak to these facts are the Forever Resorts employees at Callville Bay and those with immediate managerial responsibility for operations at Callville Bay. Cf. Szollosy v. Hyatt Corp., 396 F. Supp.2d 147, 158-59 (D. Conn. 2005) (finding that negligence of corporation's beach personnel in jet ski accident defeated Limitation Act defense). Fifteen current and former Forever Resorts employees have already testified in this matter, including managerial representatives at Callville Bay and the Regional Vice President with responsibility for Callville Bay. Forever Resorts has also agreed to the deposition of Executive Vice President Schoppmann, who reports directly to Maughan, and who professes that he is "the person at Forever Resorts ultimately in charge of managing resort operations and procedures, including the boat purchases and operations, and the hiring and training of marina employees." (Doc. No. 134, at 5.) Based on this motion, the Court is not convinced that Maughan has unique or superior knowledge that would warrant his deposition.

The Court is also not convinced by Plaintiffs' remaining contention that "a lack of knowledge by [Maughan] may … be the point." (Doc. No. 133, at 9.) Certainly, there will be cases in which a corporate executive's lack of knowledge is relevant to proving or disproving a claim or defense. This is not one of them. Plaintiffs contend that "[i]f [Maughan] did not train his employees or lacked any knowledge regarding what training his employees received, that alone establishes that … the Limitation Act [is] inapplicable." (Id.) But Maughan is at the head of a large organization and the evidence on this motion overwhelmingly supports the view that he entirely delegates the hiring, training and

supervision of resort employees to lower level executives and supervisors. There is nothing improper or unusual in this practice.

Courts should not insulate high-level executives from the obligation to submit to deposition where the testimony sought is relevant and non-duplicative. In this case, however, the Court finds that Maughan's deposition is unlikely to add to the testimony of other witnesses whose knowledge of the facts at issue is both more granular and more relevant than Maughan's appears to be. Fact discovery in this matter has been open for over eighteen months and closes one week from the date of this order. Plaintiffs' motion to compel is therefore DENIED WITH PREJUDICE.

IT IS SO ORDERED.

Dated:  September 11, 2015

Hon. William V. Gallo
United States Magistrate Judge